```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/10/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SAMAAD BISHOP,

        Plaintiff,

- against -

**MEMORANDUM AND ORDER**

HENRY MODELL & COMPANY d/b/a MODELL'S
SPORTING GOODS STORES, CITY OF NEW YORK,
et al.,

08 Civ. 7541 (NRB)

                Defendant.
----------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff, Samaad Bishop, purchased a pair of sneakers at a Modell's Sporting Goods shop in New York City on May 15, 2005. As he was exiting, he was asked by security personnel to show his receipt. That request, and the alleged events that followed, spurred him to file an action against the store and six of its employees (the "Modell's Defendants"); the security company, City Centurion Security Services, Inc., and three of its employees (the "City Centurion Defendants"); and the City of New York and two of its police officers (the "City"). Before the Court now are the defendants' motions to dismiss and plaintiff's request for leave to file a second amended complaint.

As explained further below, the Court grants defendants' motions to dismiss with respect to plaintiff's federal claims. The Court denies plaintiff's motion for leave to amend his

complaint because an amendment would be futile. Finally, the Court declines to exercise supplemental jurisdiction over plaintiff's non-federal claims, which are dismissed without prejudice to their renewal in an appropriate forum.

## BACKGROUND[1]

### I.   The Incident at Modell's

Immediately after purchasing a pair of sneakers at Modell's on May 15, 2005, plaintiff proceeded to the store's exit. (Plaintiff's First Amended Verified Complaint ("Compl.") ¶¶ 35-37.)   At the time, a City Centurion employee, working as a security guard, was monitoring the door.   Plaintiff is not certain of the identity of this individual but alleges that it was either Mark McQueen or Isaah Williams.   (See id. ¶ 37.)

Plaintiff, who is African-American, was asked by the guard to show his receipt.   Plaintiff asked whether he was suspected of shoplifting and was told that he was not.   (Id. ¶ 38.)   He refused to show his receipt and was told that he could not leave without doing so.   (Id. ¶¶ 39-40.)

Plaintiff eventually called 9-1-1 to report that he was being held against his will.   (Id. ¶ 41.)   He also telephoned an

---

[1]   The following factual background and allegations are derived from plaintiff's Complaint.   For the purposes of this motion, the Court assumes the veracity of the plaintiff's allegations.

2

acquaintance, Patricia Drayton, who remained on the phone to serve as a "witness" to the events. (Id. ¶ 42.)

Plaintiff eventually asked for the manager. (Id. ¶ 43.) In the meantime, plaintiff alleges that seven to ten unnamed individuals -- employees of Modell's and City Centurion -- "surrounded and menaced" him. (Id. ¶ 44.) Modell's employee Jimmy Avila eventually arrived and reiterated that plaintiff could not leave without showing his receipt. (Id. ¶ 45.) Plaintiff once again refused, arguing that he had shopped at Modell's stores in "white neighborhoods" and had not been subjected to a similar demand. (Id. ¶ 46.) The three men -- plaintiff, Avila, and the security guard -- continued to argue, and plaintiff alleges that the guard at one point addressed him with a racial epithet. (Id. ¶¶ 47-49.)

One of the security guards asked defendant Mary Nashlenas, a cashier at the store, whether plaintiff had made a purchase. (Id. ¶ 50.) She confirmed that he had. (Id.) According to plaintiff, Avila and the guard nevertheless refused to let him exit without showing his receipt. (Id. ¶ 51.) Plaintiff alleges that his arm was grabbed by Avila, which "caused instant pain," and that Avila then used his fist to "assault and batter" plaintiff. (Id. ¶¶ 52, 53.)

3

Police officers Timothy Cronin and Beaume[2] eventually arrived on the scene. (Id. ¶¶ 55.) The officers told plaintiff that he had to show his receipt, and plaintiff, "under protest[,] reluctantly presented his sales receipt" to Officer Cronin, who showed it to Avila and the guard. (Id. ¶ 57.) Avila then allowed plaintiff to leave the store. (Id.)

Plaintiff attributes the entirety of the conduct on the part of the defendants to racial animus.

## II. Plaintiff's Complaints with the New York State Division of Human Rights and the New York City Civilian Complaint Review Board

On May 19, 2005, plaintiff filed a complaint with the New York State Division of Human Rights (the "DHR"). (Modell's Defendants' Memorandum of Law in Support of Pre-Answer Motion to Dismiss ("Modell's Mem."), Topping Aff. Ex. D at 5.) On December 8, 2007, just weeks before the case was set for a hearing, plaintiff requested dismissal of his complaint on the basis of administrative convenience, so that he could pursue his claims in court. (See Modell's Mem., Topping Aff. Ex. C.) On February 28, 2008, the DHR granted his request. (See Modell's Mem., Topping Aff. Ex. D.)

Also in May 2005, plaintiff filed a complaint regarding the police officers' conduct with New York City's Civilian Complaint

---

[2] Officer Beaume's first name is apparently unknown to all parties.

Review Board (the "CCRB"). (Compl. ¶ 18.) On or about October 5, 2005, the CCRB exonerated the officers, finding that their actions were lawful, proper, and within the scope of their authority under police department guidelines. (Id.)[3]

## III. Procedural History of The Instant Litigation

Plaintiff filed his complaint in this action on August 26, 2008. He amended his complaint on January 6, 2009.

On January 31, 2009, plaintiff submitted a pre-motion letter to the Court requesting leave to file a second amended complaint. Defendants objected on the ground (among others) that allowing plaintiff to do so would be futile, because his federal claims were time-barred. The Court reserved its decision on the request.

In March and April 2009, the defendants filed motions to dismiss plaintiff's action. In opposition, plaintiff has provided over 80 pages of briefing. Although plaintiff's submissions include an unsolicited sur-reply, employ unusually small margins and spacing, and are well in excess of the Court's

---

[3] While it plays no part in our legal analysis, we note that plaintiff has commenced at least two other actions against retail stores and security officers based on receipt-checking policies. See Bishop v. Toys "R" Us-NY, LLC, et al., No. 04 Civ. 9403(PKC) (S.D.N.Y.); Bishop v. Best Buy, Inc., et al., 08 Civ. 8427(LBS) (S.D.N.Y.).

In addition, Patricia Drayton, who plaintiff telephoned to be a "witness" to the incident at Modell's, recently settled an action based on the receipt-checking policies at Toys "R" Us. See Drayton, et al. v. Toys "R" Us, Inc., et al., No. 07 Civ. 6315(RMB) (S.D.N.Y. Oct. 8, 2009).

rules, we have nevertheless fully reviewed and considered these papers in rendering our decision.

## DISCUSSION

As explained further below, the Court grants defendants' motions to dismiss with respect to plaintiff's federal claims. The Court denies plaintiff's request to amend his complaint because an amendment would be futile. Finally, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining claims under state and municipal law.

## I.    Defendants' Motions to Dismiss Plaintiff's Federal Claims

Plaintiff's Complaint alleges claims under six different federal civil rights provisions: 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, and 2000. He seeks punitive damages of "no less than \$10 million," as well as declaratory and injunctive relief.

Defendants argue that plaintiff's federal claims are time-barred by the relevant statutes of limitations or, in the alternative, that plaintiff has failed to state a claim under the relevant provisions. We agree that plaintiff's claims under §§ 1981, 1982, 1983, 1985(3), and 1986 are time-barred. Although plaintiff's § 2000 claim is not, he has nevertheless failed to state a claim under the statute.

6

## A. Standard for Motion to Dismiss

Courts ruling on motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1951 (2009) (internal quotations omitted).

The notion "that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 1949. "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." Id. at 1950. Courts are therefore

7

obliged to disregard conclusory allegations masquerading as factual claims, for they are "not entitled to the assumption of truth." Id.

As a general matter, a pro se complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Courts must interpret pro se pleadings "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Pro se plaintiffs nevertheless remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal. See, e.g., Schwanborn v. County of Nassau, No. 08-4753-pr, 2009 WL 3199001, at *1 (2d Cir. Oct. 7, 2009).

**B.    Timeliness of Plaintiff's Federal Claims**

Defendant's argue that the relevant statute of limitations on each of plaintiff's federal claims is three years, with the exception of the claim under § 1986, which they argue is governed by a one-year limitations period. The incident underlying the Complaint occurred on May 15, 2005 but plaintiff did not initiate this case until more than three years later, on August 26, 2008. As a result, defendants argue, the statutes of limitations have run on all of plaintiff's federal claims. Plaintiff argues that for various reasons, the default statutes of limitations either do not apply or were tolled.

8

We conclude that plaintiff's claims under §§ 1981, 1982, 1983, 1985(3), and 1986 are time-barred, but that his § 2000 claim is not. In explaining our decision, we proceed as follows. First, we summarize the statutes of limitations that would apply absent tolling or other exceptions. Second, we address plaintiff's contention that because he seeks equitable relief, his claims are not subject to statutes of limitations or, under New York law, are subject to a six-year limitations period. We find this argument flawed except as it applies to plaintiff's claim under § 2000. Third, we discuss plaintiff's claim that any applicable limitations periods were tolled during the pendency of his complaint before the DHR, with which we disagree.

We then consider arguments raised by plaintiff that are specific to his claims under § 1981 and § 1985(3). Plaintiff argues that the relevant statute of limitations for his § 1981 claim is four years, not three, pursuant to an exception for claims arising under the Civil Rights Act of 1991. Plaintiff also contends that the statute of limitations governing his claim under § 1985(3) was extended by virtue of acts that occurred after the date of the incident. We reject both of these arguments as well.

9

## 1. Summary of Plaintiff's Federal Claims and Relevant Statutes of Limitations

Section 1981 prohibits racial discrimination in the making and enforcing of contracts and the pursuit of legal remedies, 42 U.S.C. § 1981, but claims under the statute are not subject to an express statute of limitations. Where federal civil rights statutes do not contain a statute of limitations, "federal courts should select the most appropriate or analogous state statute of limitations." Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987). In New York, it is well-settled that claims under § 1981 are generally subject to a three-year limitations period. See, e.g., Butts v. City of New York Dept. of Housing, 990 F.2d 1397, 1412 (2d Cir. 1992). Although certain § 1981 claims are subject to a four-year statute of limitations -- when the claims were made possible by the Civil Rights Act of 1991 -- as we explain later, this exception does not apply to plaintiff's claims. See infra.

Section 1982 prohibits racial discrimination in the conveyance and use of real or personal property, 42 U.S.C. § 1982, and, like § 1981, does not have an express statute of limitations. Although neither the Supreme Court nor the Second Circuit has yet to rule on the proper limitations period for § 1982 claims, other circuit and district courts have employed the applicable statute of limitations for § 1983 claims. See Bacon

10

v. Suffolk Legislature, No. 05-CV-4307(JFB), 2007 WL 2288044, at *5 (E.D.N.Y. Aug. 8, 2007) (collecting cases).

Section 1983 prohibits any deprivation of constitutional or legal rights under color of state law. 42 U.S.C. § 1983. In New York, section 1983 claims are subject to a three-year statute of limitations. See, e.g., Owens v. Okure, 488 U.S. 235, 251 (1989).

Section 1985(3) prohibits any conspiracy to deprive an individual of the equal protection of the laws. 42 U.S.C. § 1985(3). These claims are subject to a three-year statute of limitations. See, e.g., Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994). Actions under § 1985 generally accrue "once the plaintiff knows of the injury on which the claim is based." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997).

Section 1986 creates a cause of action against anyone who, knowing that equal protection is about to be denied as a result of conspiratorial action, and having the power to prevent such wrong, fails to act. 42 U.S.C. § 1986. The statute expressly provides for a one-year limitations period. See id.

Plaintiff's claim under § 2000 is not subject to a statute of limitations. Although plaintiff broadly asserted a cause of action under 42 U.S.C. § 2000 et seq., the briefing on defendants' motions to dismiss has allowed him to clarify that

11

his action is based in particular on § 2000a, which prohibits racial discrimination in any place of public accommodation. (See Pl. Mem. at 42-43).[4]   Section 2000a, unlike the other federal civil rights provisions invoked by plaintiff, provides exclusively for injunctive relief.   Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 401-02 (1968).   As we explain in further detail directly below, federal statutes for which the sole remedy is equitable relief are not subject to a statute of limitations.[5]

## 2.   Plaintiff's Request for Equitable Relief

Plaintiff argues that because he seeks equitable relief (specifically, injunctive and declaratory relief), there are no statutes of limitations on any of his federal claims.   He

---

[4] The other subsections of § 2000 comprise provisions on civil actions by the Attorney General (§ 2000b); public education (§ 2000c); federally assisted programs (§ 2000d); equal employment opportunities (§ 2000e); the compilation of voting and registration statistics (§ 2000f); and the Community Relations Service of the Department of Commerce (§ 2000g). There are also a small number of miscellaneous provisions (§ 2000h).   Even on a very broad reading of plaintiff's Complaint, none of these provisions are implicated by the alleged actions of the defendants.

[5] See, e.g., Ford v. New Britain Trans. Co., No. 3:03 CV 150(MRK), 2004 WL 3078827, at *3 (D. Conn. Dec. 21, 2004) ("Because we must construe Plaintiff's claim under Title II as solely seeking the equitable remedy of injunctive relief, statute of limitations do not apply to this claim."); Mussington v. St. Luke's-Roosevelt Hosp. Ctr., 824 F. Supp. 427, 432 n.3 (S.D.N.Y. 1993) ("[T]here is no statute of limitations to be applied to the claims under . . . Title II, since [that claim] may only be for injunctive relief and therefore [has] no limitations period.").

12

contends, alternatively, that they are subject to a six-year limitations period under New York State law.

Plaintiff misreads the Supreme Court's decision in Holmberg v. Ambrecht, 327 U.S. 392 (1946), to suggest that there are no statutes of limitations on federal claims when a plaintiff requests equitable relief. Plaintiff overlooks the limitation of the holding to federal rights "for which the sole remedy is in equity." Id. at 395 (emphasis added).

As the Second Circuit has explained, the law differs for claims that provide for both legal and equitable forms of relief. In Williams v. Walsh, 558 F.2d 667 (2d Cir. 1977), the plaintiff brought a § 1983 suit requesting both injunctive relief and damages. He argued that although the relevant statute of limitations may have barred his claim for damages, there was no bar on his claim for equitable relief. Id. at 670. The court responded by distinguishing cases in which a plaintiff brings multiple causes of action, which can be subject to multiple statutes of limitations, from cases in which a plaintiff brings a single cause of action and seeks multiple remedies:

> The distinction between different causes of action and different remedies is important . . . because, in contrast to the true independence of limitations periods controlling different causes of action, the limitations periods governing two concurrent remedies, one legal and the other equitable, are not independent of one another. Specifically, when, as here, a suit in

13

> aid of a federally-created right is brought seeking
> both legal and equitable relief, "equity will withhold
> its remedy if the legal right is barred by the local
> statute of limitations." Russell v. Todd, 309 U.S.
> 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940);
> see Cope v. Anderson, 331 U.S. 461, 463-64, 67 S.Ct.
> 1340, 91 L.Ed. 1602 (1947); 2 Moore's Federal Practice
> P 3.07(3), at 762.

Id. at 671 (emphasis added).   Indeed, the Second Circuit has

held that a § 1983 claim can be time-barred even if the

plaintiff seeks only equitable relief.   See Swan v. Bd. of

Higher Educ., 319 F.2d 56, 59-60 n.5 (2d Cir. 1963).

As we have noted, plaintiff's claim under § 2000a is unique

among his federal claims because it does, indeed, invoke a

federal right "for which the sole remedy is in equity,"

Holmberg, 327 U.S. at 395.   As a result, plaintiff's § 2000a

claim -- but only that claim -- is saved by the Holmberg

principle.

Plaintiff argues in the alternative that if there is a

statute of limitations on his federal claims for equitable

relief, the limitations period is six years under Cooper v.

Parsky, 140 F.3d 433 (2d Cir. 1988), and Loengard v. Sante Fe

Industries, 70 N.Y.2d 262, 514 N.E.2d 113 (N.Y. 1987).   These

cases are inapposite.   In both decisions, the courts observed

that in suits for breach of fiduciary duty under New York State

law, a six-year statute of limitations applies to claims for

equitable relief even though a three-year limitations period may

apply to claims for monetary relief. Cooper, 140 F.3d at 440-41; Loengard, 70 N.Y.2d at 266-67. There is no tension, however, between these cases and the Second Circuit's holding in Williams, which controls when "a suit in aid of a federally-created right is brought seeking both legal and equitable relief." 558 F.2d at 671 (emphasis added).

Thus, where a federal right is at issue, a statute of limitations that would bar a legal remedy (such as damages) also bars a request for equitable relief. The fact that plaintiff seeks equitable relief in addition to monetary damages does not exempt him from the three-year statutes of limitations that govern his claims under §§ 1981, 1982, 1983, and 1985(3), or the one-year limitations period that governs his claim under § 1986.

### 3. Plaintiff's DHR Complaint

Plaintiff contends that any limitations periods were tolled during the pendency of his complaint before the DHR, pursuant to New York Executive Law § 297(9). The argument rests on a misreading of the law.

In general, state law governs the tolling of statutes of limitations on federal civil rights claims. Board of Regents v. Tomanio, 446 U.S. 478, 486-87 (1980). Federal courts, however, are not conclusively bound by state tolling provisions. As the Supreme Court explained in Tomanio, a case involving tolling of the statute of limitations on a § 1981 claim, "state statute[s]

15

of limitations and the state tolling rules [govern] federal actions . . . except when inconsistent with the federal policy underlying the cause of action under consideration." Id. at 485 (quoting Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465 (1975)).

We need not rule definitively on whether Executive Law § 297(9), properly construed, can toll the statutes of limitations on federal civil rights claims. For even if it could, the claims of the plaintiff here would be entitled to no such tolling.

Executive Law § 297(9) requires a person aggrieved by an unlawful discriminatory practice to choose between asserting any state claims(s) in a court of appropriate jurisdiction or through an administrative complaint before the DHR. See also N.Y. Exec. Law § 300. Under this so-called "election of remedies" provision, the plaintiff must choose one forum to the exclusion of the other. See, e.g., Hunnewell v. Mfrs. Hanover Trust Co., 628 F. Supp. 759, 761 (S.D.N.Y. 1986).[6]

Executive Law § 279(9) further provides that "where the [DHR] has dismissed a complaint on the grounds of administrative

---

[6] Executive Law § 297(9) does not prevent a claimant from bringing a federal claim in federal court, since "statute statutes cannot limit the jurisdiction . . . of the federal courts." Griffith v. Bank of New York, 147 F.2d 899, 904 (2d Cir. 1945), cert. denied, 325 U.S. 874 (1945); see also Devany v. County of Nassau, No. CV 88-0657(RR), 1989 WL 18748, at * 5 (E.D.N.Y. Feb. 16, 1989); Hunnewell, 628 F. Supp. at 761.

convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division." Pointing to this language, plaintiff argues that because he secured an administrative convenience dismissal from the DHR, he is therefore entitled to toll any limitations periods.

The statute, however, goes on to address dismissals that are made at the request of claimants:

> At any time prior to a hearing before a hearing examiner, a person who has a complaint pending at the division may request that the division dismiss the complaint and annul his or her election of remedies so that the human rights law claim may be pursued in court, and the division may, upon such request, dismiss the complaint on the grounds that such person's election of an administrative remedy is annulled. Notwithstanding subdivision (a) of section two hundred four of the civil practice law and rules, if a complaint is so annulled by the division, upon the request of the party bringing such complaint before the division, such party's rights to bring such cause of action before a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the division [emphasis added].

The dispute between the parties stems from the fact that plaintiff's complaint before the DHR was dismissed by the agency on the ground of administrative convenience but only after plaintiff himself requested such a dismissal. (See Modell's Mem., Topping Aff. Exs. C, D.)

17

An administrative convenience dismissal is designed to allow the DHR to conserve its resources under a variety of circumstances -- the most pertinent of which, for our purposes, is when a claimant has an alternative forum available in which to pursue his claims. See generally N.Y. Comp. Codes R. & Regs. Tit. 9, § 465.5(e)(2)(vi). For instance, a claimant before the DHR might have related federal claims in federal court, or an action in state court on a related claim that the DHR is not empowered to hear. Under such circumstances, the administrative convenience dismissal allows the DHR to dismiss the complaint in order to avoid a duplicative proceeding.

An annulment of a claimant's election of remedies is, in a sense, the mirror image of the administrative convenience dismissal. This permits a complainant himself to withdraw his complaint from the DHR and to pursue his claims before a court of competent jurisdiction instead. See, e.g., New York State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 161 (2d Cir. 2001).

Plaintiff fails to recognize that when a complainant requests a dismissal for administrative convenience so that he can pursue his case in federal court, then he has also, by necessity, annulled his election of remedies.[7] As a result, his

---

[7] Plaintiff did, however, seem to realize this when he managed to secure his administrative convenience dismissal from

18

right to subsequently bring suit in "a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the division." N.Y. Exec. Law § 279(9). In other words, he is precluded from the benefit of any tolling that might have been available had the DHR dismissed the complaint for administrative convenience on its own.[8]

---

the DHR. The very first heading in his letter brief to the DHR states: "Request to Dismiss Human Rights Complaint for Administrative Convenience and that Complainant's Election of Remedies be Annulled." (Modell's Mem., Topping Aff. Ex. C at 1.)

[8] See, e.g., Oshinsky v. New York City, No. 98 Civ. 5467(AGS), 2001 WL 417686, at *3 (S.D.N.Y. Apr. 24, 2001) ("DHR's dismissal of plaintiff's administrative complaints, at plaintiff's request, subjected plaintiff's [state human rights law] claims to the three-year statute of limitations generally applicable to such claims."); Sprott v. New York City Hous. Auth., No. 94 Civ. 3818(PKL), 1999 WL 1206678, at *2-3 (S.D.N.Y. Dec. 16, 1999) ("While the statute clearly permits [a complainant to request and receive an administrative convenience dismissal], it also makes clear that plaintiff's right to bring her state law claims in a court of appropriate jurisdiction 'shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the division.'"); Henderson v. Town of Van Buren, 15 A.D.3d 980, 981, 789 N.Y.S.2d 355 (N.Y. App. Div. 4th Dept. 2005) ("Although the SDHR determinations state that the complaints were 'dismissed on the grounds of administrative convenience,' the dismissals did not serve agency convenience but rather the convenience of plaintiff. Plaintiff requested in effect that SDHR 'dismiss the complaint[s] and annul . . . her election of remedies so that the human rights law claim[s] may be pursued in court.' Under those circumstances, the statute of limitations was not tolled during the pendency of the complaints filed with SDHR, and the action was therefore untimely commenced.") (internal citations omitted).

19

Plaintiff raises three arguments in response, none of which is convincing. First, plaintiff argues that the administrative convenience dismissal was designed to conserve the DHR's time and resources. This is true, but it does not follow from this proposition that a claimant who himself requests and secures an administrative convenience dismissal is then entitled to a tolling of the limitations periods on his claims.

Second, plaintiff points to the decision of the New York Court of Appeals in Pan American World Airways, Inc. v. New York State Human Rights Appeal Board, 61 N.Y.2d 542 (N.Y. 1984), which held that a complainant's (state) claims before the DHR were tolled during the pendency of the administrative action because the case was ultimately dismissed on the basis of administrative convenience. That case, however, involved a request for dismissal from the defendant in the administrative action -- a request that was subsequently granted by the DHR. Here, we are dealing with a claimant who moved for the dismissal.

Finally, plaintiff argues that we should disregard the decision of New York's Appellate Division in Henderson v. Town of Van Buren, 15 A.D.3d 980, 789 N.Y.S.2d 355 (N.Y. App. Div. 4th Dept. 2005), which reached the same interpretation of Executive Law § 279(9) that we do. Plaintiff argues that interpretations of state law by intermediate state courts are

not necessarily binding on federal courts sitting in diversity. Our conclusion is not based on any deference that we accord to Henderson. Having considered the question on our own, we fully agree with the reasoning and conclusion in Henderson, as we do with the federal courts that have reached the same conclusion on this question, see Oshinsky v. New York City, No. 98 Civ. 5467(AGS), 2001 WL 417686, at *3 (S.D.N.Y. Apr. 24, 2001); Sprott v. New York City Housing Authority, No. 94 Civ. 3818(PKL), 1999 WL 1206678, at *2-3 (S.D.N.Y. Dec. 16, 1999).

Thus, even assuming that Executive Law § 297(9) could provide for tolling of statutes of limitations on federal civil rights claims, plaintiff's claims in this case would be entitled to no such tolling.

### 4. Plaintiff's § 1981 Claim and the Civil Rights Act of 1991

With respect in particular to his § 1981 claim, plaintiff contends that it is subject to a four-year statute of limitations rather than the more common three-year limitations period. This argument rests on a misreading of the relevant law.

### a) The Civil Rights Act of 1991 and the Statute of Limitations for § 1981 Claims

Under 28 U.S.C. § 1658(a), a civil action "arising under an Act of Congress enacted after" December 1, 1990 is subject to a four-year statute of limitations. Although § 1981 was enacted

21

well before this date, it was amended through the Civil Rights Act of 1991 ("the 1991 Act"). Claims made possible by the 1991 Act are therefore subject to the four-year statute of limitations provided by § 1658, not the three-year limitations period that would otherwise apply.

Prior to the 1991 Act, section 1981, read, in full:

> All persons within the jurisdiction of the United States shall have the same right in Every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

See Rivers v. Roadway Express, Inc., 511 U.S. 298, 302 n.2 (1993). The 1991 Act amplified the "make and enforce contracts" provision of the statute and restructured § 1981 into three subsections. As amended, the words quoted above are the first subsection of the statute. 42 U.S.C. § 1981(a). The second subsection defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b). The final subsection of the law states that the rights in § 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of State law." Id. § 1981(c).

22

The amendments were enacted principally to overrule the Supreme Court's decision in Patterson v. McLean Credit Union, 491 U.S. 164, 179 (1989), which held that § 1981 "cover[ed] only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." See Phillippeaux v. North Cent. Bronx Hosp., 871 F. Supp. 640, 655 (S.D.N.Y. 1994) (reviewing legislative history of the 1991 Act). In addition, the 1991 Act codified (in § 1981(c)) the long-standing holding of the Supreme Court that § 1981 applies to private actors as well as government actors. See Runyon v. McCrary, 427 U.S. 160 (1976); see also Phillippeaux, 871 F. Supp. at 655.

The 1991 Act created some confusion as to the appropriate limitations period for § 1981 claims, but the Supreme Court clarified the issue in Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369 (2004). The Court explained that a "cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990 -- and therefore is governed by § 1658's 4-year statute of limitations -- if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." Id. at 382 (quoting 42 U.S.C. § 1658(a)) (emphasis added).

Plaintiff contends that his § 1981 claim arises under the 1991 Act because he pled separate causes of action under § 1981(a), § 1981(b), and § 1981(c). He suggests that because

23

these subsections did not exist until § 1981 was amended, then his claims were necessarily made possibly by the 1991 Act. This is not a tenable legal argument. If plaintiff were correct, then every § 1981 claim filed after December 1, 1990 would be subject to a four-year statute of limitations so long as plaintiffs made sure to plead under the subsections of § 1981 rather than assert claims under § 1981 more broadly. It would be unusual for the law to turn on that type of pleading technicality, and nothing in Jones remotely suggests that it should. Rather, the Court's opinion asks courts to engage in an analysis that asks, simply, whether a plaintiff's substantive cause of action existed prior to the 1991 Act.

Read broadly, and in conjunction with his opposition papers, plaintiff's Complaint can be read to assert one (or both) of two possible causes of action under § 1981 -- the first under the statute's "full and equal benefit" clause, and the second under the "make and enforce contracts" clause. In neither case, however, has plaintiff stated a claim under a post-1990 enactment. As a result, his § 1981 claim is time-barred.

### b) Plaintiff's Claim Under the "Full and Equal Benefit" Clause of § 1981

Plaintiff's claim under the "full and equal benefit" clause could have been asserted prior to the 1991 Act. Plaintiff

24

suggests that his claim against the Modell's Defendants and the City Centurion Defendants was made possible by § 1981(c) because it clarifies that § 1981 applies to private actors.    Section 1981, however, had long been held to apply to private actors, and the 1991 Act simply codified this.    See Runyon, 427 U.S. 160; see also Phillippeaux, 871 F. Supp. at 655.

                    c)  Plaintiff's  Claim  Under  the  "Make  and
                        Enforce Contracts" Clause of § 1981

    Plaintiff's claim under the "make and enforce contracts" clause likewise does not arise under the 1991 Act.    Based on plaintiff's Complaint and opposition papers, the Court discerns just  one  viable  contract  that  the  plaintiff  could  use  to underlie a § 1981 claim -- the retail contract between plaintiff and Modell's for the purchase of the sneakers he bought the day of  the  incident.[9]    Plaintiff  contends  that  he  has  alleged  a §

---

        [9] Plaintiff  seems  to  suggest  that  he  was  a  third-party beneficiary  of  an  alleged  "Paid  Detail"  contract  between Modell's and the City of New York, under which the City effectively  leases  out  police  officers  for  private  use.    It  is well-settled  in  New  York  that  a  party  claiming  rights  as  a third-party  beneficiary  to  a  contract  must  establish  "(1)  the existence  of  a  valid  and  binding  contract  between  other  parties, (2)  that  the  contract  was  intended  for  his  benefit  and  (3)  that the  benefit  to  him  is  sufficiently  immediate,  rather  than incidental,  to  indicate  the  assumption  by  the  contracting parties  of  a  duty  to  compensate  him  if  the  benefit  is  lost." Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 251 (2d Cir.  2006).    Plaintiff  has  at  best  alleged  only  the  first element.   He has failed to provide any factual allegations that (even  if  true)  would  suggest  that  the  Paid  Detail  contract  was intended  for  his  benefit  (rather  than  the  benefit  of  Modell's

1981 cause of action for conduct that occurred after the consummation of the contract and that, because such a cause of action did not exist prior to the 1991 Act, his claim is therefore entitled to the four-year statute of limitations under § 1658(a). We disagree.

Even assuming the truth of plaintiff's factual allegations, he would not have a claim made possible by the amended version of § 1981. In a 2006 opinion, Judge Castel undertook a thorough analysis of nearly identical claims brought by this plaintiff based on the receipt-checking policies of Toys "R" Us. See Bishop v. Toys "R" Us-NY LLC, et al., 414 F. Supp. 2d 385 (S.D.N.Y. 2006). Judge Castel concluded that "courts that have addressed section 1981 claims in the context of retail transactions have held that after a purchase is completed, 'there is no continuing contractual relationship. Instead, the relationship is based on a single discrete transaction -- the purchase of goods.'" Id. (quoting Arguello v. Conoco, Inc., 330 F.3d 355, 360 (5th Cir. 2003) and collecting cases). We

---

and/or the City), or that any benefit to him was immediate rather than incidental.

Plaintiff's opposition papers also seem to argue that his § 1981 claim can be based on state tort law -- specifically, the alleged failure on the part of the Modell's Defendants and/or the City Centurion Defendants to exercise reasonable care to plaintiff as a business invitee. Section 1981, however, does not create a federal cause of action for alleged violations of state tort law by private parties.

concur.[10]  Here, the allegedly discriminatory actions of the defendants all occurred after his purchase of sneakers was completed and plaintiff was attempting to exit the store.  Thus, the contractual relationship between plaintiff and Modell's had ended, and none of defendants' alleged actions interfered with his right to "make" or "enforce" that contract.

Plaintiff points to three cases that purport to show that his allegations state a valid claim under § 1981 for post-contract-formation interference with the right to "make" or "enforce" a contract:  Perry v. Burger King Corp., 924 F. Supp. 548 (S.D.N.Y. 1996); Joseph v. New York Yankees Partnership, No. 00 Civ. 2275(SHS), 2000 WL 1559019 (S.D.N.Y. Oct. 19, 2000); and CBOCS West, Inc. v. Humphries, --- U.S. ----, 128 S. Ct. 1951 (2008).  These cases, however, do not support plaintiff's contention.

In Perry, the plaintiff alleged that he was denied use of the bathroom at a Burger King on the basis of his race.  The court denied a motion to dismiss, holding that an issue of fact existed regarding whether plaintiff "contracted for food and use

---

[10] Plaintiff claims that we are precluded from relying on Judge Castel's opinion.  He cites to Federal Rule of Evidence 201, which governs judicial notice of adjudicative facts.  This rule is irrelevant to our ability to review and adopt the legal reasoning of other courts.  Although the case is pending appeal and, as a district court opinion, is not binding upon us, we fully endorse Judge Castel's reasoning and interpretation of the law based on our own independent review of the relevant legal materials.

27

of the bathroom." 924 F. Supp. at 552 (emphasis in original). As the court noted, use of the bathroom at a restaurant could conceivably be held to fall within the purview of a contractual relationship premised on the purchase of food. We decline to hold that the use of an exit at a retail store is analogous. See Bishop, 414 F. Supp. at 392 (collecting cases).

In Joseph, an African-American woman alleged that before she was allowed to enter a restaurant, she was required to comply with a dress code that was not enforced against non-minorities. The plaintiff's allegations did not concern any post-contract conduct. Rather, the question before the court was whether the plaintiff had made out a claim under § 1981 by alleging the imposition of additional conditions prior to contract formation. 2000 WL 1559019, at *3. Here, plaintiff does not allege that he was required to fulfill any additional condition before entering into and completing his contract with Modell's for the purchase of sneakers.

Finally, plaintiff points to the Supreme Court's decision in CBOCS West. He claims that the Court held that as a result of the 1991 amendment to § 1981, the statute now applies to claims of retaliation for exercising rights under "all contracts, including other than employment contracts." (Pl. Mem. at 17-18.) This is an overly broad reading of the opinion, which, in fact, interpreted § 1981 in the context of an

employment-related retaliation action.[11] Even assuming plaintiff were correct, his factual allegations could not support a claim for retaliation based on an attempt to enforce his contractual rights, since we conclude (as many other courts have) that plaintiff's contractual relationship with Modell's terminated upon completion of the purchase of his sneakers.

Thus, plaintiff has failed to state a claim under § 1981 that was made possible by the 1991 Act. His claim is therefore subject to the three-year statute of limitations, and because that time has lapsed, the claim is time-barred.

### 5. Plaintiff's § 1985(3) Claim

Plaintiff argues that the statute of limitations on his § 1985(3) has been extended by virtue of two "overt acts" in furtherance of the alleged conspiracy to deprive him of the equal protection of the laws. First, plaintiff contends that the Modell's Defendants submitted false statements during his administrative action before the DHR, and that because his DHR complaint was dismissed in February 2008, the three-year statute of limitations for a § 1985(3) claim should run from that time. Second, plaintiff alleges that the statute of limitations with

---

[11] Claims for retaliation outside of the employment context have long been actionable under § 1982. See, e.g., Sullivan v. Little Hunting Park, Inc., 396 U.S. 229 (1969). Such a claim in this case, however, would be barred by the three-year statute of limitations on § 1982 actions. See Bacon v. Suffolk Legislature, No. 05-CV-4307(JFB), 2007 WL 2288044, at *5 (E.D.N.Y. Aug. 8, 2007) (collecting cases).

respect to the City of New York should run from October 5, 2005, the day that the CCRB exonerated police officers Cronin and Beaume.

Construing plaintiff's Complaint and opposition papers liberally, it is clear that the purported conspiracy -- whatever the mechanism, whatever the deprivation, and whomever the parties involved -- would have achieved its primary goal on May 15, 2005, the day of the alleged events at Modell's. The Court understands plaintiff to be arguing that the Modell's Defendants' conduct before the DHR and the City's exoneration of the officers in the CCRB proceeding amounted, in effect, to efforts to conceal their illegal conduct on the day of the incident.

In Grunewald v. United States, 353 U.S. 391 (1957), the Court considered and rejected a very similar argument. Although Grunewald involved a criminal conspiracy, the Court's logic applies with equal force to plaintiff's allegations here. In Grunewald, the government argued that the defendants had engaged in a conspiracy to engage in tax fraud and that their subsequent efforts to conceal this conspiracy (which involved persuading a witness to lie to a grand jury) were part and parcel of the conspiracy and could therefore be used to extend its duration for the purposes of the limitations period. Id. at 399, 403. The Court observed that "every conspiracy is by its very nature

secret" and "will inevitably be followed by actions taken to cover the conspirators' traces." Id. at 402. Accepting the government's theory, the Court concluded, "would for all practical purposes wipe out the statute of limitations in conspiracy cases." Id.

Here, plaintiff has alleged that the defendants engaged in illegal conduct on May 14, 2005, and that they covered it up in the DHR and CCRB proceedings. To proceed on an assumption that defendants in § 1985(3) conspiracy cases will, as with criminal conspirators, attempt to conceal the illegality of their activities, and then to use that assumption to extend the duration of the conspiracy would eviscerate the statute of limitations on § 1985(3) claims.

Thus, we conclude that the statute of limitations on plaintiff's § 1985(3) began running on May 15, 2005, and because more than three years passed before his complaint in this action was filed, the claim is time-barred.

### C. Plaintiff's § 2000a Claim

Having concluded that plaintiff's claim under § 2000a is not time-barred, we turn to the argument of the Modell's and City Centurion defendants that plaintiff has failed to state a claim under the statute. They argue that the Modell's store is not a "public accommodation" within the meaning of the statute. We agree.

31

Section 2000a provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the grounds of race." 42 U.S.C. § 2000a(a). A place of "public accommodation" is defined as an establishment either affecting interstate commerce or supported by state action, and falling into one of the following categories: (1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises, including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment. Id. § 2000a(b).

The text of § 2000a does not explicitly include retail establishments, see 42 U.S.C. § 2000a(b), and case law confirms that retail stores are not places of public accommodation within the meaning of the provision. See Kelly v. Yorktown Police Dep't, 05 Civ. 6984(DC), 2006 WL 3316183, at *5 (S.D.N.Y. Nov.

13, 2006); Priddy v. Shopko Corp., 918 F. Supp. 358, 359 (D. Utah 1995); McCrea v. Saks, Inc., No. Civ. A. 00-CV-1936(MAM), 2000 WL 1912726, at *2 (E.D. Pa. Dec. 22, 2000); Gigliotti v. Wawa, Inc., No. Civ. A. 99-3432(LCB), 2000 WL 133755, at *1 (E.D. Pa. Feb. 2, 2000); cf. Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 431-34 (4th Cir. 2006); United States v. Baird, 85 F.3d 450, 455 (9th Cir. 1996).

Plaintiff argues that he has sufficiently alleged that Modell's falls into the fifth category outlined above -- an establishment that contains a covered establishment. Over the course of a 41-page Complaint and over 80 pages of briefing in opposition to defendants' motions to dismiss, plaintiff's sole factual allegation to support this argument reads, in its entirety, as follows: "That MODELL'S stores serve food to the public or provide entertainment for the customers." (Compl. ¶ 80.)

Although pro se complaints are to be read generously, they are still subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937 (2009). See, e.g., Schwanborn v. County of Nassau, No. 08-4753-pr, 2009 WL 3199001, at *1 (2d Cir. Oct. 7, 2009). As such, conclusory allegations are "not entitled to the assumption of truth." Iqbal, 129 S.Ct.

33

at 1951.    In the context of a § 2000a claim, plaintiff's allegation that Modell's serves food and provides entertainment is a quintessentially conclusory allegation, and we are not bound to assume its veracity.

Ordinarily, where a plaintiff seeks leave to re-plead his case, he provides the court with some indication of how he will buttress his allegations.    Indeed, with respect to other claims, plaintiff has provided specific explanations of how a second amended complaint will purportedly allow him to address the deficiencies identified by the defendants.    See infra.

Despite numerous opportunities to provide the Court with factual allegations to support his claim that Modell's is a covered establishment, plaintiff has failed to do so.    The Modell's Defendants and the City Centurion Defendants argued in their initial moving papers that Modell's was not a covered establishment.    On this particular point, plaintiff's 50-page opposition to the defendants' initial briefs argued simply that the Court was required to take his allegation at face value. The Modell's Defendants addressed the issue again in their reply papers.    Plaintiff submitted a 32-page sur-reply to the defendants' reply briefs, but it contained nothing regarding his § 2000a claim.    Under these circumstances, the Court is hard-pressed to avoid the conclusion that plaintiff's original allegation was included solely to survive a motion to dismiss.

34

We therefore dismiss plaintiff's claim under § 2000a.

## II. Plaintiff's Motion for Leave to Amend His Complaint

Leave to amend a complaint is granted at the court's discretion and "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, courts will deny leave to amend where the proposed amendment would be futile. Foman v. Davis, 371 U.S. 178 (1962). An amendment is futile when it cannot survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). For instance, a court need not grant leave to amend if the relevant claims would be time-barred. See Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000). Having fully considered the arguments contained in the over 80 pages of briefing submitted by plaintiff, the Court concludes that a second amendment to his complaint would be futile because his federal claims would remain time-barred.

Plaintiff has proposed just two amendments relevant to the statutes of limitations issues on his claims under §§ 1981, 1982, 1983, 1985(3), and 1986. First, plaintiff has proposed elaborating on the ways in which the Modell's Defendants and the City acted in furtherance of their conspiracy to deprive him of equal protection of the laws by (respectively) lying to the DHR and exonerating officers Cronin and Beaume in the CCRB investigation. For the reasons we explained earlier, an

35

amendment on this issue would do nothing to alter the conclusion that plaintiff's § 1985(3) is time-barred.   Acts to conceal a conspiracy under § 1985(3), even if they occurred, cannot be used to extend the duration of the conspiracy for the purposes of the limitations period.

Second, plaintiff has proposed amending his complaint "to set forth his § 1983 claims under 28 U.S.C. § 1658(a)" (Pl. Rep. Mem. at 16), in order to avail himself of the four-year statute of limitations that applies to acts of Congress that were passed after December 1, 1990.   Plaintiff has not proposed a single allegation that he would include in his amended complaint on this issue.   Rather, he appears to believe that simply restating his § 1983 claim as a claim under § 1658(a) will afford him the benefit of the four-year limitations period.

Construing plaintiff's Complaint and his briefs generously, we conclude that there are no conceivable allegations that plaintiff could add to his Complaint that would entitle him to a four-year statute of limitations on a § 1983 claim.   As we noted earlier, a "cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990 -- and therefore is governed by § 1658's 4-year statute of limitations -- if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."   Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 382 (2004) (quoting 28 U.S.C. § 1658(a)).   Section 1983 has

existed since 1866.    Dennis v. Higgins, 498 U.S. 439 (1991).
Since December 1, 1990, the statute has been amended exactly
once, in order to limit injunctive relief against judicial
officers.    See Federal Courts Improvement Act of 1996, Pub. L.
104-317, Title III, § 309(c), 100 Stat. 3853.    This amendment
"limit[ed] relief against a specified group of defendants, not
relevant to the instant litigation, and [did] not fundamentally
alter the statute or create a new cause of action."    Thompson
v. City of Shasta Lake, 314 F. Supp. 2d 1017, 1023 (E.D. Cal.
2004).    The Court therefore finds it inconceivable that
plaintiff could state a claim under § 1983 that would be
entitled to a four-year limitations period.

Because the Court finds plaintiff's proposed amendments to
be futile, we deny his request for leave to amend.

## III. Plaintiff's Claims Under State and Municipal Law

Plaintiff also alleges numerous claims under New York State
and New York City law.    Although the statute governing
supplemental jurisdiction, 28 U.S.C. § 1367, does not require
dismissal of pendent claims where all of the federal claims have
been dismissed, if it appears that non-federal issues
"substantially predominate, whether in terms of proof, of the
scope of the issues raised, or of the comprehensiveness of the
remedy sought," those non-federal claims "may be dismissed
without prejudice and left for resolution to state tribunals."

37

United Mine Workers v. Gibbs, 383 U.S. 715 (1966). We therefore decline to exercise supplemental jurisdiction over plaintiff's pendent claims, which are dismissed without prejudice to their renewal in an appropriate forum. We emphasize that our refusal to dismiss plaintiff's non-federal claims should not be read as a commentary on their merits.

## CONCLUSION

For the foregoing reasons, plaintiff's federal claims are dismissed with prejudice. His non-federal claims are dismissed without prejudice to their renewal in a court of appropriate jurisdiction.

The Clerk of the Court is respectfully directed to close this case.

Dated:   New York, New York
         November 9, 2009

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

38

Copies of the foregoing Order have been mailed on this date to the following:

**Plaintiff**
Samaad Bishop
P.O. Box 778
New York, NY 10116

**Attorney for the Modell's Defendants**
Joanna M. Topping, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

**Attorney for the Centurion Defendants**
Deborah M. Zawadzki, Esq.
Jonathan B. Bruno, Esq.
Kaufman Borgest & Ryan LLP
120 Broadway
14th floor
New York, NY 10271

**Attorney for the City of New York**
Philip R. DePaul
Office of the Corporation Counsel
City of New York
Law Department
100 Church Street
New York, NY 10007